### SMITH v. THE SCHOONER J. C. KING.

*'District Court, W. D. Pennsylvania. August 2, 1880.)*

1. SEAMEN—WAGES—REFUSAL TO WORK ON SUNDAY.—A seaman upon a schooner in the harbor of Frankfort, Michigan, where she was towed to receive a cargo of lumber, cannot refuse to work on Sunday, in loading the schooner, where the towing vessel is not able to enter the harbor by reason of an insufficiency of water, and is lying outside in the lake, awaiting the schooner, and is in a place of danger.

Where the master of the schooner was of opinion that it was necessary, for the safety of the towing vessel, that the loading of the schooner (begun on Friday) should be completed on Sunday, and ordered the work to be done, it was the duty of the crews to obey.

In this case, *held*, that a seaman refusing to work on Sunday was rightfully expelled from the schooner, and forfeited his wages for his disobedience.

In Admiralty. Libel for wages, etc.

*Clark Olds*, for libellant.

*F. F. Marshall*, for respondent.

ACHESON, D. J. On June 18, 1879, the steam barge James Davidson, having in tow the schooners Orgarita and J. C. King, left Chicago, bound to Frankfort, Michigan, to load part of her tow with lumber, thence to Cheboygan; and thence to Buffalo or Tonawanda. The libellant was a seaman upon the schooner King, and by the shipping articles, which are in the usual form, he and the rest of the crew agreed "to work on any vessel in our tow, and on any lighter that may be used to load or lighten our vessels, and to work any place

we are wanted in loading." The fleet reached Frankfort on the morning of Friday, June 20th, when the Orgarita and King went inside the harbor for the purpose of loading with lumber. The Davidson, however, on account of an insufficiency of water in the harbor, was compelled to remain outside in the lake. At the close of the day's work on Saturday evening the Orgarita was loaded to nine feet, which was all the water the harbor would allow, and it became necessary to finish on their load by putting it on the King, to be transferred at a proper point. On Sunday morning, after breakfast, about 7 o'clock, the crews of the Orgarita and King, and part of the crew of the Davidson, were ordered to load the King with lumber to complete the cargo of the Orgarita. This order was promptly obeyed by all the men except four of the crew of the King, one of whom was the libellant. These four men declined to work. At first persuasion was tried to induce them to obey. They were informed that there would only be about six hours' work, and then they would have a rest of 30 hours, until the vessel got down to the straits at Cheboygan. Captain Sharkey, the master of the King, ordered them to go to work, but they positively refused. He then informed them they must either go to work or go ashore. They chose the latter course and quit the vessel.

The libellant contends that he had a right to refuse to load the King because it was Sunday; that the order to work or go ashore was virtually an expulsion from the schooner, and this without proper justification; and he sues for his wages for the whole voyage, and his travelling and other expenses.

The testimony for the libellant shows "that Frankfort is a land-locked harbor, and vessels are perfectly safe there in all kinds of weather." So far, then, as the schooners Orgarita and King are concerned, it may be conceded (especially in view of the Michigan Sunday law) that there was no necessity to justify the Sunday labor required of the appellant. But the steam barge Davidson was not able to enter the harbor. She lay loaded with a cargo of grain, out in the open lake, awaiting her tow—the two schooners. Her safety was to be considered. While the lake was not then "very rough," it

appears "that the weather was threatening." There was, indeed, no immediate danger to the Davidson, but the uncontradicted evidence is that "she lay in a very dangerous place," in the event of a change of weather. Captain Starkey swears it was his opinion that there was an "absolute necessity" to get the schooners loaded and out, for the safety of the Davidson. James Carr, the master of the Orgarita, and James Davidson, the master of the steam barge and owner of the three vessels, testify respectively that they entertained a similar opinion. Charles Cardnell, a mariner on board the Orgarita, who helped to stow the lumber on the King, testifies: "I considered it necessary for that loading to be done on Sunday for the safety of the Davidson, or I would not have worked myself. I was a caulker on board the Orgarita, and was not obliged to work then." The alacrity with which the other men, to the number of 40, worked in loading the King, indicates that they held the same view as the witness Cardnell.

I am satisfied from all the evidence that, with reference to the situation of the Davidson, there was a reasonable necessity for the Sunday labor which the libellant was called upon to perform. It was, however, for the master of the King, under the then existing circumstances, to determine whether the work of loading the schooner was necessary for the safety of the Davidson, and obedience to his orders was the plain duty of the libellant. It was not for him to set up his judgment against that of the master. That it was Sunday was no excuse for his refusal to perform the duty required of him, (The Richard Matt, 1 Biss. 440;) and I am of opinion that the master of the King had a clear right to discharge the libellant for his disobedience. Had these four rebellious seamen been permitted to remain on board their spirit of insubordination might have infected the rest of the crews.

I think the libellant forfeited his wages for the five days he worked on the King, (The Richard Matt, supra,) and I will therefore dismiss his libel, but will decree no costs against him. And now, to-wit, August 2, 1880, the libel in this case is dismissed.